IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Honorable |
| | ) | |
| | ) | Case No. $07 \cdot 2108$ |
| v. | ) | |
| | ) | |
| DON ADAMS, | ) | |
| DRENNON G. ADAMS, | ) | |
| LULA MAE COOK, aka LULA MAE | ) | |
| DILLARD, and A & A INVESTMENTS | ) | |
| d/b/a/ PHOENIX VILLAGE | ) | |
| APARTMENTS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT ORDER**

### 1. Factual and Procedural Background

The United States initiated this action on September 28, 2007, against Don Adams,

Drennon G. Adams, Lula Mae Cook (aka Lula Mae Dillard) and A & A Investments d/b/a

Phoenix Village Apartments ("Defendants"). In its complaint, the United States alleges that

Defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act of 1988, 42 U.S.C.

§§ 3601 et seq. ("the Act"), on the basis of familial status with respect to residential rental units

or dwellings at the Phoenix Village Apartments in Fort Smith, Arkansas.

The United States alleges that were this case to proceed to trial, the United States would

present evidence including the following:

1.      At all relevant times prior to the filing of this lawsuit, Defendants owned and operated

        Phoenix Village Apartments, a 100-unit apartment complex.

2.   Between January and April, 2007, the United States performed fair housing tests in which

paired individuals with similar characteristics except for race or color or familial status

visited the Phoenix Village rental office, 924 S. Quincy Street, Fort Smith, Arkansas, and

inquired about the availability of two-bedroom apartments. Audio recordings of these

tests and other evidence obtained by the Justice Department indicated that the Defendants

discriminated on the basis of familial status. In particular:

    A.   During these tests, rental agents asked the testers if they had children or

how many people would be staying in the apartment. During several of the

tests, the rental agents informed the prospective tenant that the complex

did not have or allow children.

    B.   Testers who told the rental agents that they have children were denied

additional information on unit availability, not offered an opportunity to

view any apartments, and not given applications.

The United States alleges that the conduct of defendants as described in the preceding

paragraphs constitutes a refusal to rent, a refusal to negotiate for the rental of, or otherwise

making unavailable or denying dwellings to persons because of familial status, in violation of 42

U.S.C. § 3604(a); and statements with respect to the rental of a dwelling that indicate a

preference, limitation, or discrimination based on familial status, in violation of 42 U.S.C.

§ 3604(c).

The United States further alleges that Defendants' conduct as described above constitutes

a pattern or practice of resistance to the full enjoyment of rights granted by the Act; and a denial

to a group of persons of rights granted by the Act, which denial raises an issue of general public

importance, in violation of 42 U.S.C. § 3614(a).

The parties desire to avoid costly and protracted litigation and agree that the claims against Defendants should be settled and resolved without the necessity of a trial. The parties have agreed to the entry of this Consent Order, as indicated by the signatures below.

Therefore, it is **ORDERED, ADJUDGED and DECREED** as follows:

### II. Injunction

1. Defendants, their agents, employees, successors, and all persons in active concert or participation with them are hereby enjoined, with respect to the rental of dwellings, from:

   a. Refusing to rent after the making of a bona fide offer, or refusing to negotiate for the rental of, or otherwise making unavailable or denying, a dwelling to any person because of familial status;

   b. Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;

   c. Making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination; or

   d. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act.

Page -3-

### III. Nondiscrimination Policies and Procedures

2. Defendants' responsibilities under this Consent Order shall apply to each and every dwelling unit in which any Defendant has an ownership, management, or other financial interest. Dwelling units subject to this Order are hereinafter referred to as "covered dwelling units," a current list of which is attached as Exhibit A. Defendants' signatures to this Order serve as a certification of the completeness and accuracy of this list.

3. Defendants shall prepare and implement uniform, non-discriminatory Policies and Procedures regarding the rental of covered dwelling units that shall be applied equally to all applicants, actual and prospective, regardless of their familial status (having children under 18).

### IV. Notice to Public of Nondiscrimination Policies

4. Within thirty (30) days after the date of entry of this Consent Order, Defendants shall take the following steps to notify the public of their nondiscriminatory policies:

    a. Prominently post in the rental office at all rental offices the Defendants may currently or subsequently use for the rental of dwellings, a fair housing sign no smaller than ten (10) inches by fourteen (14) inches that indicates that all apartments are available for rent on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

    b. Whenever any covered dwelling unit is available, Defendants shall prominently post an easily readable "For Rent" or "Vacancy" sign or notice at the apartment building in which the dwelling unit is vacant. The sign or notice shall include the slogan "Equal Housing Opportunity" and/or the fair housing logo. Such slogan

Page -4-

and logo shall be prominently displayed and easily readable.

c.    Include the words "Equal Housing Opportunity" and/or the fair housing logo in all
rental advertising conducted by Defendants, their agents or employees, in
newspapers, flyers, handouts, telephone directories and other written materials; on
radio, television or other media broadcasts; and on all billboards, signs, pamphlets,
brochures and other promotional literature, provided that this requirement does not
compel Defendants to advertise in any of these media, but does require
compliance with this provision whenever Defendants so advertise.  The words
and/or logo shall be prominently placed and easily readable.

d.    Include the following phrase in the standard rental application and the standard
rental agreement used for covered rental dwelling units, using letters of equal or
greater size to those of the text in the body of the document:

We are an equal housing opportunity provider.  We do not discriminate on
the basis of race, color, sex, national origin, religion, disability or familial
status (having children under age 18).

### V. Mandatory Training

5.    Within thirty (30) days of the entry of this Consent Order, Defendants shall provide a
copy of this Order and the Nondiscrimination Policies and Procedures to their agents and
employees involved in showing, renting, or managing any and all covered dwelling units
and secure the signed statement from each agent or employee acknowledging that he or
she has received and read the Order and the Nondiscrimination Policies and Procedures,
has had the opportunity to have questions answered about the Order and

Nondiscrimination Policies and Procedures, and agrees to abide by the relevant provisions
of the Order and said policies and procedures. This statement shall be in the form of
Exhibit C.

6.  During the term of this Order, within five (5) days after each new agent or employee
becomes involved in showing, renting, or managing any covered dwelling units,
Defendants shall provide a copy of this Order and the Nondiscrimination Policies and
Procedures to said agent or employee involved in showing, renting, or managing any and
all covered dwelling units and secure the signed statement from each agent or employee
acknowledging that he or she has received and read the Order, had the opportunity to have
questions about the Order answered, and that he or she has also received and read the
Nondiscrimination Policies Procedures, and agrees to abide by said policies and
procedures and the relevant provisions of the Order. This statement shall be in the form
of Exhibit C.

7.  Within one hundred eighty (180) days from the date of entry of this Order, Defendants
and each owner or officer of the Phoenix Village Apartments involved in management
and administration, and all agents and employees of Phoenix Village Apartments involved
in showing, renting, or managing any covered dwelling units shall undergo in-person
training on the Fair Housing Act, with specific emphasis on discrimination on the basis of
familial status. The training shall be conducted by an independent, qualified third party,
approved in advance by the United States, and any expenses associated with this training
shall be borne by Defendants. Defendants shall obtain from the trainer certifications of
attendance, executed by each individual who received the training, confirming their

attendance, in a form acceptable to the United States. This confirmation shall include the name of the course, the date the course was taken, and the length of the course and/or time within which the course was completed.

### VI. Processing Rental Applications, Record Keeping, and Compliance Testing

8.    Processing Rental Applications

Within ninety (90) days from the date of entry of this Order, Defendants shall develop and implement, with respect to all covered dwelling units, objective, uniform, non-discriminatory standards and procedures for the processing of applications, the establishment and maintenance of an Availability List, the establishment and maintenance of a Waiting List and a procedure for notifying people who are on the Waiting List about an available unit, and a procedure for deciding in a non-discriminatory manner which applicants shall be permitted to rent available dwellings. Such standards and procedures shall be submitted to the United States for approval in advance of their implementation and shall be consistent with the provisions of this Section. The standards and procedures shall be posted and prominently displayed in the Phoenix Village Apartments rental office and in any office where there is rental activity and/or personal contact with applicants, and a copy of these standards and procedures shall be made available upon request to any applicant for the rental of a dwelling. For the duration of this Order, these rental standards and procedures may be modified only if written notice is given to counsel for the United States thirty (30) days before modifications are to take effect.

9.    Record Keeping

With respect to the rental of covered dwelling units, within thirty (30) days from the date

of this Order, Defendants shall ensure that each of the following are maintained and
updated as new information becomes available:

a.    An Availability List on a daily basis that includes the address and apartment
      number of each unit known to be available or reasonably expected to be available
      for rental within thirty (30) days; monthly rent for each such unit; security deposit
      for each such unit; the date Defendants or their agents or employees were first
      informed it would be available for rental, and the first date it would be available
      for rental or occupancy by a new tenant. Defendants and their agents/employees
      shall share information on the Availability List with each person who visits or
      calls the rental office to inquire about the availability of rental dwellings;

b.    Guest Cards: A request shall be made of all persons who visit or inquire about
      rental units at the Phoenix Village Apartments to fill out a Guest Card providing
      the date of the visit, the visitor's name, address, daytime and evening telephone
      numbers, children under 18 expected to occupy the dwelling, and the date by
      which they wish to move. Defendants shall note on the Guest Card the dwelling
      units the person was shown and whether the person was given an application. The
      top portion of the Guest Card shall contain the following disclaimer: "The
      following information is requested to assist Phoenix Village Apartments in
      complying with the federal Fair Housing Act and will be kept confidential. This
      information is not required in order to rent an apartment.";

c.    A Waiting List for all persons who inquire by telephone or in person about renting
      a dwelling from Defendants and who are informed that there are no vacancies or

available apartments to rent. This Waiting List shall indicate the date of the visit

or telephone call, the visitor's or caller's name, address, daytime and evening

telephone numbers, the date on which the person wishes to move and any other

relevant information (such as a preference regarding the number of bedrooms).

With regard to those who inquire in-person, Defendants shall indicate whether the

individuals have any children. The Defendants shall also note on the waiting list

the date, time, and employee or other person who contacted any individual to

inform him or her of any vacancies or available apartments, and the manner of

each attempt to contact persons on the list; and

d.     A Rental Application Log maintained on a daily basis that sets forth the name of

the applicant, the number of children under 18, if any, residing with the applicant,

whether the application for tenancy was approved or rejected, the building and

unit number occupied for all approved applicants, and a detailed explanation for

all rejected applications.

10.    Compliance Testing

The United States may take steps to monitor Defendants' compliance with this Order

including, but not limited to, conducting fair housing tests at any dwelling in which any

Defendant, now or in the future, has a direct or indirect ownership, management, or

financial interest.   .

**VII. Reporting Requirements**

11.    Within ninety (90) days of the date of entry of this Consent Order, and every six (6)

months thereafter for the duration of this Order, Defendants shall deliver to counsel for

the United States[1] a report containing information about Defendants' compliance efforts during the preceding reporting period, including but not limited to:

a. Copies of all mandatory education acknowledgments signed by Defendants, their agents and employees, and all certifications of attendance of each participant in such educational program, pursuant to Section V of this Order;

b. Copies of all Availability Lists, Guest Cards and other information recorded by any means related to any inquiries regarding the availability of rental dwellings, including Rental Application Logs, and Waiting Lists maintained pursuant to Section VI of this Order;

c. Copies of lists setting forth the occupancy of each covered dwelling unit by address and apartment number, including the name and familial status of each tenant in that dwelling unit during the reporting period;

d. Photographs of each office in which rental activity is conducted, showing the fair housing signs required by Section IV of this Order; and

e. An updated list of all covered dwelling units.

12. During the period in which this Order is in effect, Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to the obligations under this Order, including all rental applications, leases, and rental roll ledgers, and occupancy lists for all covered dwelling units as well as records relating to

---

[1] All documents or other communications required by this Order to be sent to counsel for the United States shall be addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, DJ 175-70-147, United States Department of Justice, 950 Pennsylvania Avenue N.W.- G St., Washington, D.C. 20530, or as otherwise directed by the United States. If the Consent Order requires transmission by facsimile, the communication shall also be sent via facsimile to (202) 514-1116.

the transfer of interest in dwelling units as set out in Section XI below.  Upon reasonable
notice to counsel for Defendants, representatives of the United States shall be permitted to
inspect and copy all such records at any and all reasonable times or, upon request by the
United States, Defendants shall provide copies of such documents.

13.　During the period in which this Order is in effect, Defendants shall notify counsel for the
United States in writing within fifteen (15) days of receipt of any written or oral
complaint against Defendants, or Defendants' agents or employees, regarding familial
status discrimination in housing.  If the complaint is written, Defendants shall provide a
copy of it with the notification.  The notification shall include the full details of the
complaint, including the complainant's name, address, and telephone number.  Defendants
shall also promptly provide the United States all information it may request concerning
any such complaint and shall inform the United States within fifteen (15) days of any
resolution of such complaint.

## VIII. Compensation of Aggrieved Persons

14.　Within ten (10) business days after entry of this Consent Order, the defendants shall
deposit the sum of ONE HUNDRED AND SIXTY-FIVE THOUSAND DOLLARS
($165,000) into an interest-bearing account for the purpose of compensating persons
whom the Court determines may have been harmed by Defendants' discriminatory rental
practices (hereinafter "aggrieved persons").  In addition, within ten (10) business days of
the entry of this Order,  Defendants shall submit proof to the United States that this
account has been established and the funds deposited.

15.　Within sixty (60) days after entry of this Order, Defendants shall arrange for the

publication of and publish a Notice to Potential Victims of Housing Discrimination
("Notice") in the Times Record of Fort Smith, Arkansas. The Notice shall appear as
follows:

a.      The Notice shall be published on at least eight (8) occasions in the 'A' Section or
        a news section (not the legal notices section) of the Times Record of Fort Smith,
        Arkansas, including at least four (4) publications on Sunday. Each published
        Notice shall appear in a space measuring at least one-eighth (1/8) of a page;

b.      Each Notice shall set forth a summary of the legal and evidentiary contentions of
        the United States and a general statement of the relief provided under this Consent
        Order. Each Notice shall also contain a statement that the United States seeks
        information from any persons who claim to have been subjected to familial status
        discrimination by Defendants in connection with inquiring about, applying for or
        obtaining rental housing, or with respect to the terms or conditions or privileges of
        rental housing. Each Notice shall invite such persons to contact counsel for the
        United States concerning their complaints within one hundred twenty (120) days
        from the entry of this Order. The text of this Notice is set forth in Exhibit D;

c.      Defendants shall provide a copy of the newspaper containing each such Notice to
        counsel for the United States within ten (10) days after publication of the Notice;

d.      Defendants shall produce any rental/tenancy records, or any other records in the
        possession, custody, or control of Defendants, their agents or employees, upon
        notice to Defendants' counsel, which the United States believes to be useful in
        identifying persons who may be entitled to relief under this Order. Upon

reasonable notice, Defendants shall provide such rental/tenancy records or shall
permit representatives of the United States to receive copies of such rental/tenancy
records through Defendants' counsel;

e.   Nothing in this order shall prevent the United States from making any additional
efforts that it deems appropriate to locate and provide notice to potential aggrieved
persons.

16.   Aggrieved persons, as described above in paragraph VIII, 15, shall have one hundred
twenty (120) days from the date of the entry of this Order to contact the United States in
response to this Notice.

17.   The United States shall investigate the claims of the aggrieved persons and, within one
hundred eighty (180) days from the entry of this Order, shall make a preliminary
determination of which persons are aggrieved and an appropriate amount of damages that
should be paid to each such person.  The United States will inform Defendants in writing
of its preliminary determinations, together with a copy of a sworn declaration from each
aggrieved person setting forth the factual basis of the claim.  The Defendants shall have
thirty (30) days to review the declaration and provide any documents or information that
they believe may refute the claim to the United States.

18.   After receiving Defendants' comments, the United States shall submit its final
recommendations to the Court for approval, identifying the aggrieved persons and an
appropriate amount of damages that should be paid to each such person, together with a
copy of the sworn declarations and any documents or information submitted by
Defendants.  Within ten (10) days of a Court order providing for the distribution of funds

to aggrieved persons, Defendants shall deliver to counsel for the United States checks

payable to the aggrieved persons in the amounts approved by the Court.

19.    In no event shall the aggregate of all checks to the aggrieved persons exceed the sum of

$165,000 plus accrued interest.

20.    When counsel for the United States has received a check from Defendants payable to an

aggrieved person and a signed release in the form of Exhibit E from the aggrieved person,

counsel for the United States shall deliver the check to the aggrieved person and the

original, signed release to counsel for Defendants.  No aggrieved person shall be paid

until he/she has signed and delivered to counsel for the United States the release at

Exhibit E.

21.    After the satisfaction of paragraphs VIII, 14-20, and expiration of the corresponding time

periods, any money remaining in the Settlement Fund shall be released to Defendants.

### IX. Civil Penalty

22.    Within thirty (30) days after the entry of this Consent Order, the Defendants shall pay a

total of twenty thousand dollars ($20,000) to the United States as a civil penalty, pursuant

to 42 U.S.C. 3614(d)(I)(C).  This payment shall be delivered to counsel for the United

States in the form of a cashier's check payable to the "United States Treasury."

### X. Acquisition of Dwelling Units

23.    If, at any time during the term of this Consent Order, any Defendant acquires a direct or

indirect ownership, management, or other financial interest in any other dwelling unit,

said unit shall become a "covered dwelling unit" subject to all relevant provisions of this

Order.  Defendant shall notify counsel for the United States within thirty (30) days of

Page -14-

acquiring said interest. The notice shall include identification of the nature of Defendant's interest in the property; the address; the number of individual dwelling units; the number of bedrooms in each unit; the names of any existing tenants; and the number of children under 18 residing with each such tenant. Defendants shall also include in their notice to counsel for the United States a copy of the documents memorializing the transfer in interest and a copy of the lease for any existing tenant(s).

### XI. Transfer of Interest in Covered Dwelling Units

24. If at any time while this Order remains in effect, a Defendant ("transferring Defendant") decides to transfer the entirety of said Defendant's direct or indirect ownership, management, or other financial interest in a covered dwelling unit to an unrelated party ("purchaser" or "transferee") in an arms-length transaction,[2] the transferring Defendant shall take the following steps:

   a. At least thirty (30) days prior to completion of the sale or transfer, provide to each prospective purchaser or other transferee a copy of this Order along with written notice that the subject dwelling unit (or units) is (are) subject to Sections II - VII and XI - XIII of the Order;

   b. At least thirty (30) days prior to completion of the sale or transfer, provide to the United States, by facsimile and first-class mail, written notice of its intent to sell or otherwise transfer Defendant's interest in the dwelling unit(s), along with a copy of the notice sent to each prospective transferee, containing each prospective

---

[2] For purposes of this Consent Order, "arms-length transaction" is defined as a transaction such as a contract or agreement that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that contract.

transferee's name, address and telephone number;

c.    Within thirty (30) days following completion of the sale or other transfer, the

transferring Defendant shall provide to the United States by first-class mail a copy

of the documents memorializing the transfer in interest of the dwelling unit(s);

d.    The transferring Defendant shall require the transferee, as a condition of the sale

or other transfer, to agree in writing to perform all obligations and be liable for

compliance with Sections II - VII and XI - XIII of this Order for the duration of

this Order, with respect to the subject dwelling unit(s);

e.    If the transferring Defendant complies with parts a, b, c, and d, above, and thereby

transfers all of Defendant's ownership, management, or other financial interest in

the dwelling unit(s) to the purchaser or other transferee, said Defendant will

thereafter be relieved of Defendant's obligations under Sections II - VII and XI -

XII of this Order, but only with respect to the dwelling units in which all interest

was so transferred.  Defendant shall otherwise remain liable for compliance with

all sections of the Order and with respect to all other covered dwelling units.

25.    If the proposed transfer of interest is not an arms-length transaction, the transferring

Defendant must comply with each requirement set out in the preceding subparagraph a, b,

c, and d, above.  In addition, the transferring Defendant shall remain jointly and severally

liable, along with the purchaser or other transferee, for any violations of Sections II - VII

and XI - XIII of this Order with respect to the relevant dwelling unit(s) for the duration of

the Order.  In addition, the transferring Defendant shall otherwise remain liable for

compliance with the Consent Order and with respect to all other covered dwelling units.

## XII. Scope and Duration of Consent Order

26.  The provisions of this Consent Order shall apply to all Defendants, their employees,
agents, successors, and all persons acting in active concert or participation with them.

27.  This Consent Order is effective immediately upon its entry by the Court and shall remain
in effect for four (4) years.

28.  The Court shall retain jurisdiction for the duration of this Order to enforce the terms of the
Order, after which time the case shall be dismissed with prejudice.

29.  All parties shall be responsible for their own attorney's fees and court costs, except as
provided for in Section XIII below.

### XIII. Remedies for Non-Compliance, Time for Performance, and Modifications

30.  The United States may move the Court to extend the period in which this Order is in
effect if Defendants violate one or more terms of the Order or if the interests of justice
otherwise require an extension of the terms of the Order.

31.  Any time limits for performance imposed by this Order may be extended by mutual
written agreement of the parties.

32.  The parties to this Order shall endeavor in good faith to resolve informally any differences
regarding interpretation of and compliance with this Order prior to bringing such matters
to the Court for resolution.  However, in the event the United States contends that there
has been a failure by any Defendant, whether willful or otherwise, to perform in a timely
manner any act required by this Order or otherwise to comply with any provision thereof,
the United States may move this Court to impose any remedy authorized by law or equity,
including, but not limited to, an order requiring performance of such act or deeming such

act to have been performed, and an award of any damages, costs, and attorney's fees

which may have been occasioned by the Defendant's or Defendants' violation or failure to

perform.

33.   The parties agree that in the event that any Defendant engages in any future violation of

the Fair Housing Act, such violation shall constitute a "subsequent violation" pursuant to

42 U.S.C. § 3614(d).

**IT IS SO ORDERED**:

This 1ST day of October 2007.

_____

UNITED STATES DISTRICT JUDGE

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

OCT 0 1 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

By their signatures below, the parties consent to the entry of this Consent Order.

**For the United States:**

PETER D. KEISLER
Acting Attorney General

ROBERT C. BALFE
United States Attorney

RENA J. COMISAC
Acting Assistant Attorney General
Civil Rights Division

DEBORAH GROOM
Civil Chief
United States Attorney's Office
414 Parker Street
Fort Smith, AR 72901
Phone: (479)783-5125
Fax: (479)785-2442
Arkansas Bar No. 80054

STEVEN H. ROSENBAUM
Chief,
REBECCA B. BOND
Deputy Chief
AMBER R. STANDRIDGE
Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Northwestern Building, 7th Floor
Washington, D.C. 20530
Phone: (202) 514-3556
Fax: (202) 514-1116

**For Defendants:**

CHARLES D. BAKER
31 W Cherry Street
Alma, AR 72921-3419

PO Box 700
Alma, AR 72921-0700
Bar # 92023